IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 15-cv-01472-RBJ

TELIAX, INC. d/b/a Teliax Colorado, LLC,

    Plaintiff/Counter-Defendant,

v.

AT&T CORP.,

    Counter-Plaintiff/Defendant.

## ORDER

On November 1, 2016 the Court granted plaintiff Teliax, Inc.'s ("Teliax") motion for summary judgment on defendant AT&T Corporation's ("AT&T") counterclaims against it. ECF No. 73. Although Teliax did not move for summary judgment on its own claims at that time, the parties subsequently agreed that the Court's order effectively resolved those claims in Teliax's favor. ECF No. 75 at ¶2. The parties thereafter sought to vacate their trial date and prepared to stipulate to the entry of final judgment in Teliax's favor. *Id.* However, before they could do so the D.C. Circuit issued an opinion vacating a Federal Communication Commission ("FCC") decision I relied on heavily in reaching that decision. *See AT&T Corp. v. FCC*, 841 F.3d 1047, 1049 (D.C. Cir. 2016) (vacating *In re Connect America Fund*, 30 FCC Rcd. 1587 (2015) (hereinafter the "*CAF* Order")). Accordingly, AT&T now contends that the Court should vacate that prior order and enter summary judgment in its favor instead. ECF No. 78. For the reasons below, however, I find that while vacating my prior order makes sense in light of the D.C.

1

Circuit's decision, this case should be referred to the FCC rather than decided summarily in AT&T's favor.

As way of background, this case involves a billing dispute between Teliax—a company routing toll-free 1-800 or "8YY" calls in Colorado—and AT&T—a corporation servicing many of those Colorado-based 8YY customers. ECF No. 73 at 1. The dispute arose after AT&T refused to pay Teliax certain "end-office switching" charges because of its belief that the services Teliax provided to it did not constitute end-office switching. *Id.* An end-office switching service typically consists of the physical last-mile transmission of a call via an actual physical facility. *Id.* at 10. Routing over-the-top Voice of Internet Protocol ("VoIP") traffic—i.e., calls made over the internet—Teliax did not in fact provide those exact services.

Nevertheless, Teliax successfully argued that it was entitled to charge for them. Teliax's Tariff—i.e., its "contract" with AT&T—incorporated what was known as the VoIP Symmetry Rule or "VSR." The VSR, which the FCC passed in 2011, allows over-the-top VoIP providers and local exchange carriers ("LEC") such as Teliax to potentially charge "end-office switching charges" for providing the "functional equivalent" of end-office switching services. *CAF* Order at *2; *see* 47 C.F.R. §§ 51.903 and 51.913; *see also In Re Connect America Fund*, 26 FCC Rcd. 17663 (2011) (adopting those regulations). What's more, in the *CAF* Order decided four years later the FCC clarified that the services LECs like Teliax provided did in fact constitute the "functional equivalent" of end-office switching services. *See CAF* Order at *6. Thus, I granted summary judgment in Teliax's favor.

On November 18, 2016 in a case challenging the FCC's latter decision, however, the D.C. Circuit held that the FCC had not explained what the phrase "functionally equivalent" meant "with the requisite clarity to enable [the court] to sustain [the] conclusion" that the

services LECs like Teliax provide are the "functional equivalent" of end-office switching. *AT&T*, 841 F.3d at 1049. Accordingly, the D.C. Circuit vacated the *CAF* Order and remanded to the Commission the issue of what services, if any, provided by over-the-top VoIP-LEC providers constitute the "functional equivalent" of end-office switching.

As AT&T correctly points out, this remand of the *CAF* Order effectively undermines my finding that the routing services Teliax provided to AT&T in this case constituted the functional equivalent of end-offices switching. *See* ECF No. 73 at 12 ("[B]ecause I conclude that the FCC made it clear in its 2015 clarification of that rule that the services CLECs like Teliax provide are the 'functional equivalent of end-office switching[,]' see *CAF* Order, at *11, I find that Teliax lawfully billed AT&T for these end user service charges, and that AT&T cannot now dispute those bills."). For that reason, the summary judgment I entered in Teliax's favor in this billing dispute must be vacated.[1]

However, because the D.C. Circuit remanded to the FCC for further clarification this issue of what "functional equivalence" lawfully means, the opposite conclusions AT&T wants me to reach—i.e., that Teliax's services do *not* constitute the functional equivalent of end-office switching as a matter of law and that AT&T is therefore entitled to summary judgment in its favor—are not necessarily borne out either. In other words, even though the D.C. Circuit expressed in dicta its skepticism that over-the-top VoIP providers and LECs could lawfully charge for end-office switching—and, therefore, whether the VSR itself was valid, see *AT&T Corp.*, 841 F.3d at 1054–56—the issue of whether any services companies like Teliax provide

---

[1] Teliax's main argument in opposition is that because the D.C. Circuit's decision did not actually vacate the VSR that my decision still stands. ECF No. 77 at 3–4. However, while I held in my prior order that Teliax's Tariff validly incorporated the VSR, I nonetheless concluded that its services constituted the "functional equivalent" of end-office switching entitling them to bill for those services per the VSR because the FCC in the *CAF* Order had said so. ECF No. 73 at 12. Thus, while the VSR might still stand (for now), there is no longer any authority to suggest that, *as a matter of law*, the services Teliax provided constituted the "functional equivalent" of end-office switching.

3

constitute the "functional equivalent" of end-office switching remains an issue the FCC is currently grappling with. Accordingly, because this is an undecided matter that the administrative agency tasked with clarifying this regulatory issue is currently deciding, I agree with AT&T's alternative argument that if summary judgment in its favor is not warranted that a referral of this case to the FCC under the doctrine of "primary jurisdiction" is the next best step.

"The doctrine of primary jurisdiction allows a federal court to refer a matter extending beyond the 'conventional experiences of judges' or 'falling within the realm of administrative discretion' to an administrative agency with more specialized experience, expertise, and insight."[2] *Williams Pipe Line Co. v. Empire Gas Corp.*, 76 F.3d 1491, 1496 (10th Cir. 1996) (quoting *Nat'l Commc'ns Ass'n, Inc. v. American Tel. and Tel. Co.*, 46 F.3d 220, 223 (2d Cir. 1995)). "Specifically, courts apply primary jurisdiction to cases involving technical and intricate questions of fact and policy that Congress has assigned to a specific agency[.]" *Id.* (same).

Typically a case-by-case decision, under Tenth Circuit precedent a court must nevertheless consider three questions before deciding whether to invoke this doctrine and refer an issue to the relevant administrative agency. *See TON Servs., Inc. v. Qwest Corp.*, 493 F.3d 1225, 1239 (10th Cir. 2007). First, it must decide "whether the issues of fact in the case . . . are not within the conventional experience of judges[.]" *Id.* Second, it must assess "whether the issues of fact . . . require the exercise of administrative discretion[.]" *Id.* And finally, the court must decide whether the issues "require uniformity and consistency in the regulation of the business entrusted to the particular agency." *Id.*

---

[2] "When the primary jurisdiction doctrine is invoked, 'the judicial process is suspended pending referral of such issues to the administrative body for its views.'" *TON Servs., Inc. v. Qwest Corp.*, 493 F.3d 1225, 1239 (10th Cir. 2007) (quoting *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956)). "Referral does not automatically divest the court of jurisdiction." *Id.* Rather, "[t]he district court may retain jurisdiction over the proceedings by staying the plaintiff's claims pending agency action or, if neither party will be unfairly disadvantaged, dismissing the case without prejudice." *Id.*

Here, I answer all three questions in the affirmative. Although it perhaps goes without saying, judges with no technical background in telecommunications are ill-prepared when compared to the FCC to decide what services if any performed by over-the-top VoIP-LEC providers constitute the "functional equivalent" of the end-office switching. Furthermore, it is quite clear that the FCC desires uniformity with respect to this issue as its previous attempt to do so through the *CAF* Order evidences. Finally, the Tenth Circuit has explained that "when the regulatory agency has actions pending before it which may influence the instant litigation, invocation of the doctrine [of primary jurisdiction] may be appropriate." *Id.* As described above, such is the case here.

For those reasons, I find that it is proper to vacate the Court's prior order granting a summary judgment in Teliax's favor on AT&T's counterclaims [ECF No. 73] and to refer this case to the FCC for further guidance. Accordingly, the Court shall stay further proceedings in this case pending this referral to the FCC.

DATED this 1st day of September, 2017.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge